UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL JOHNSON | ) |
|       Plaintiff | ) |
| | ) |
| V. | ) |
| | ) |
| TOWN OF MONTEREY, MONTEREY | ) |
| SELECT BOARD, | ) |
| And KENNETH BASLER, in his official and | ) |
| Individual capacity | ) |
| | ) |
|       Defendants | ) |

---

COMPLAINT

---

## INTRODUCTION

The Plaintiff, Officer Michael Johnson, brings this action seeking redress for substantial violations of his rights pursuant to the Federal and Massachusetts Civil Rights acts as well as under the Massachusetts Whistleblower Act, M.G.L. ch. 149, § 185, as well as violations of the common law by retaliating against him for exercising his rights of free speech as a citizen and by reporting, objecting to, and filing complaints about what he reasonably believed were ongoing violations of law in the Town of Monterey and the Monterey Board of Selectman, specifically by defendant Kenneth Basler.

## JURISDICTION

The Plaintiff asserts federal jurisdiction under 42 U.S.C. § 1983, and pendent jurisdiction of his state law claims under 28 U.S.C. § 1367.

## PARTIES

1. The Plaintiff, Michael Johnson, is an individual residing in the Town of Monterey, Berkshire County, Commonwealth of Massachusetts.

2. Defendant Town of Monterey, is a municipality duly incorporated under the laws of the Commonwealth of Massachusetts

3. The Defendant, Monterey Board of Selectman, is located in Berkshire County, Commonwealth of Massachusetts.

4. The Defendant, Kenneth Basler, at all times relevant to this Complaint, served as a Select Board member, with a place of business located in Berkshire County, Commonwealth of Massachusetts.

## FACTS

5. Plaintiff, Sergeant Michael Johnson (Hereinafter "Plaintiff" or "Johnson"), has been employed as a Police Officer for the Town of Monterey ("the Town"), for approximately 7 years.

6. The Plaintiff's position as a member of the Department within the Town of Monterey requires an annual vote of approval by the Town's Select Board. The Plaintiff has been previously unanimously approved for renewal each of the past six years.

7. Prior to his employment with Monterey, Johnson served as a police officer for the Town of Buckland for approximately 5 years.

8. Plaintiff is and has always been a dedicated, energetic and hard-working employee. He has no prior disciplinary history and was at all times performed his duties in an appropriate manner.

9. On or about December 2010, Chief Gareth Backhaus (Hereinafter "Chief" or "Chief Backhaus") underwent surgery. As a result, Plaintiff was placed as the Officer in Charge (OIC) and assumed the majority of the Chief's responsibilities for a significant period of time.

10. On August 1, 2011, Plaintiff was appointed to the Monterey Council on Aging by the Select Board. In this role, Plaintiff advocated for Monterey's elderly citizens and coordinated programs designed to meet the needs of the aging in living dignified and independent lives.

11. On or about August 20, 2012, Chief Backhaus recommended Plaintiff be promoted to the rank of Sergeant based upon his performance and commitment to serving the people of Monterey. The Select Board recognized Plaintiff's outstanding performance and unanimously agreed to approve the promotion.

12. On May 3, 2014, Defendant Basler was elected to the Select Board.

13. Immediately after being elected to the Select Board, Basler began to make false allegations about various items Plaintiff had purchased with the Council on Aging funds. Plaintiff informed Defendant Basler that all of the purchases had been approved of prior to making any transaction.

14. The accusations made by Defendant Basler were false and made with the intention of publicly disparaging the Plaintiff and holding him up to criticism within the Town and the Police Department.

15. On or about April of 2016, Plaintiff announced his campaign for the open seat on the Select Board seat left vacant by Scott Jensen's decision to not seek re-election. Defendant Basler was a member of the Select Board at that time.

16. Plaintiff publicly posted his intention to run for Select Board in the Monterey News. The topic of the Plaintiff's candidacy became a significant issue within the small town of Monterey based upon his stated intention to change the manner in which the Select Board operated.

17. Plaintiff publicly stated that he wanted to promote more transparency on the board and increase financial security for the Town of Monterey with stated long-term goals instead of what the Plaintiff viewed as a shortsighted outlook by the current administration.

18. Members of the Select Board, including Defendant Basler, were upset by the comments made by the Plaintiff regarding the need for greater transparency and the Town's need for long-term goals.

19. On Saturday April 16, 2016, Plaintiff participated in a "Candidates Forum" where the campaign issues were discussed publicly in an open meeting.

20. During the forum, Plaintiff was very critical of the current Select Board. Plaintiff stated that he was not in favor of "town hall" appointments because they gave the power to the Select Board and removed it from the people.

21. Plaintiff repeatedly stated that the "people run the town," not the members of the Select Board, who are like "department heads." (Attached hereto as Exhibit 1, Monterey News May, 2016)

22. Plaintiff was also vocal about his opinion that the Town should create budgetary room to hire a Town Administrator because the "town needs a professional in town hall." The Plaintiff's proposal to hire a Town Administrator would have diminished the role and influence of those currently serving as members of the Select Board.

23. Significantly, each of the candidates for Select Board were asked about their ability to "devote substantial time (to the position), and on which areas of town affairs would you be most qualified to lead."

24. Plaintiff responded by stating that his answer was going to "stir the pot a little," and felt that in recent months and years the issues in front of the Select Board went beyond the board's member's duties.

25. On May 10, 2016, Plaintiff lost the election for the position of Select Board.

26. On or about May 16, 2016, an incident involving the Town Treasurer, Jen Brown, and Melissa Noe occurred. The incident was minor in nature in which Ms. Brown was alleged to have used profanity toward Noe.

27. The Select Board meeting minutes from May 23, 2016, state that Chairperson Kenn Basler is "also going to speak with (the Plaintiff) Sergeant Johnson who was in the (Town Hall) building, but did not investigate the matter while it was occurring which was of concern to M. Noe." (Attached hereto as Exhibit 2)

28. Melissa Noe was the source of the initial complaint made that the Plaintiff had not responded to assist Noe when she was in the confrontation with another Town employee. Defendant Basler and Ms. Noe are close personal friends.

29. Defendant Basler's did no investigation prior making his derogatory comments about the Plaintiff, which were then recorded into the Select Board's minutes and made available to the public.

30. Defendant Basler knew, or in the exercise of a reasonable inquiry, should have known that the Plaintiff was not present in Town Hall at the time of the confrontation between the two women. More significantly, the event was not of significance to require police intervention.

31. The Plaintiff avers that Defendant Basler falsely accused Sergeant Johnson of malfeasance in an effort to create a basis for the nonrenewal of his appointment as a police officer.

32. On June 27, 2016, Plaintiff went to the Select Board meeting and provided written notification to the members of the Select Board, including Defendant Basler that the false statements made by Melissa Noe needed to stop. (Attached hereto as Exhibit 3)

33. Plaintiff concluded by stating, "I hope this complaint is considered as a fair warning and has the desired effect or else I would be forced to take legal action against your employees."

34. On June 26, 2016, Plaintiff's wife, Emily Johnson, emailed the entire Select Board with a separate document titled "Citizen Complaint."

35. In her email, Ms. Johnson criticized the Select Board's inaction and their tacit approval of the Plaintiff's character being impugned and by suggesting he did not appropriately respond to the incident.

36. On July 5, 2016, the Plaintiff again met with the Select Board in open session.

37. The Select Board's minutes' state that Plaintiff, "requested that the employee names be kept out of future minutes until the party involved has first been spoken to. Kenn concurred that none of this situation should have gone into the minutes and that the Board was negligent in doing their due diligence and investigating the matter as they should have." (Attached hereto as Exhibit 4)

38. The meeting minutes' state, "As there was a disagreement as to whether or not Mike (Plaintiff) was in Town Hall during a recent disturbance (Mike asserted that he was not present, M. Noe asserted that he was present). Steve asked the chief for a clarification of the policy in which police officers are required to investigate all disturbances in Town Hall. Both the Chief and Mike asserted that it was the policy of the police department. The Board has considered this matter closed as neither M. Noe nor Mike can prove or disprove he was in the building during the incident in question."

39. The Plaintiff, by appearing before the Select Board, angered Chairperson Basler, who then began a campaign to question the Plaintiff's actions as a police officer in subsequent Select Board meetings.

40. The October 26, 2016 minutes state "Kenn (Defendant Basler) reported that he met last night with the Chief and Sergeant (Plaintiff) regarding an incident that occurred in August. The discussion held in Kenn's opinion has raised concerns regarding the department's structure and lack of leadership; he is suggesting the Board look at bringing in an outside evaluator to provide a comprehensive report regarding our department's operations. Kenn will work with M. Noe to find companies that specialize in this."

41. The Plaintiff alleges that the actions of Defendant Basler were retaliatory given that there was no intervening event that had occurred which would have warranted the need to question, let alone investigate the "department's structure and lack of leadership."

42. On November 9, 2016, the Board offered the position of part-time Town Administrator to Willie Morales, who accepted.

43. The first item that Mr. Morales was instructed by the Board to look into was "to investigate the many issues over the last 2 years and high turnover within the police department rather than hiring an outside consultant..."

44. On November 12, 2016 Town Administrator Morales met with Chief Backhaus and the Plaintiff. The Town Administrator stated that based upon his conversations with the Select Board "they (Select Board) do not want to reappoint you (Plaintiff) because you question their authority."

45. Town Administrator Morales informed the Chief and Plaintiff that, for the time being, he was able to "convince the Select Board to leave police matters to the Police chief and let him(Chief) run his department."

46. On December 21, 2016, a complaint was filed against Chairperson Basler by his fellow Board members who alleged in the complaint that "there was a pattern of Kenn usurping the rest of the board, overreaching and making decision by himself."

47. As a resolution, Defendant Basler was removed from his position as the "liaison" between the Select Board and the police department. The new Town Administrator, Mr. Morales was then assigned to that position.

48. On January 18, 2017 the Finance Committee voted not to approve the funding for Defendant Basler's suggested study into the police department's operations and "lack of leadership."

49. On February 27, 2017, Town Administrator Morales resigned from his part-time position and cited his concerns "with how the Town is being run."

50. Morales raised the same concerns Plaintiff had raised about the conduct of the Select Board. Morales stated, "He feels that the Select Board is improperly using their authority and will not follow Massachusetts General Law.... Willie is concerned that Town Counsel is representing the wishes of the Select Board and not the needs of the Town." (Attached hereto as Exhibit 5 at 2/27 minutes.)

51. On or about April of 2017, Plaintiff announced his candidacy and stated his intention to run again for a position on the Select Board against Defendant Kenn Basler.

52. Plaintiff's current campaign theme mirrored his previously stated beliefs that the Select Board was operating without transparency. The Plaintiff also questioned the use of public funds by the Select Board.

53. Plaintiff was extremely outspoken about the Select Board and specifically Defendant Basler's failure to comply with the Town's need for approval of spending of "free cash. Specifically, the Plaintiff accused the Select Board of

inappropriate spending $591,000.00 of free cash without getting proper approval through a vote at a special town meeting.

54. Plaintiff also raised concerns about the Select Board's failure to comply with town bylaws and Massachusetts General Laws requiring the Town to produce a Town Report to all households by the second week in February.

55. As a part of his objection to the Select Board's actions, the Plaintiff was quoted in the Berkshire Eagle on May 18, 2017. Plaintiff stated he "thought the board should allow more public input about where the town's money was going" and he said he "didn't think it (the Select Board) was being transparent enough about broadband efforts" which was an attempt to bring high speed internet to the Town. (Attached hereto as Exhibit 6)

56. Subsequently, in May of 2017, Defendant Basler won the election and maintained his seat on the Monterey Select Board.

57. Eventually, the official Town Report came out three weeks after the Town was required to provide them to Monterey citizens. The Town Report also contained confidential medical information of citizens from both Monterey and the Town of Sandisfield which the Plaintiff and his wife complained to the Select Board regarding.

58. On June 21, 2017, the Select Board met to discuss the upcoming reappointments of officers within the Police Department, including Plaintiff.

59. As stated previously, for the past 6 years, Plaintiff had been unanimously reappointed to his position as a member of the Monterey Police Department.

60. Plaintiff had an exemplary work performance and has received numerous commendations and letters of praise from the community and his co-workers

61. Within weeks of announcing his candidacy against Defendant Basler and then publicly voicing his concerns regarding the Select Board's transparency and use of public funds, Defendant Basler and the members of the Select Board retaliated against Plaintiff by voting not to reappoint him as a member of the police department.

62. No disciplinary action had been taken against the Plaintiff prior to the vote of the Board or during the year preceding the Board's refusal to reappoint him. No legitimate reason was ever provided for the decision to not reappoint the Plaintiff.

63. At this June 21, 2017, Select Board meeting, the Chief of Police emphatically recommended the reappointment of the Plaintiff to his position of Sergeant and "feels it is in the best interest of the town."

64. During the discussion a question was raised by Defendant Basler, who asked "for confirmation that when the Plaintiff is covering for the Chief but not actually working the shift should (the Plaintiff) not be working in another town."

65. The Plaintiff had been working additional shifts in neighboring Sandisfield when off duty in Monterey for approximately 1 year. The Monterey Chief was aware of and had approved the additional shifts in nearby Sandisfield. The Plaintiff was not paid by Monterey when "covering for the Chief" nor considered to be on duty when working in Sandisfield. This issue had never been raised prior to the Select Board's meeting on reappointments.

66. The June 21, 2017, meeting minutes, composed by Melissa Noe, also state that, "The Board expressed frustration with the Sergeant's (Plaintiff) lack of acknowledgement to staff and Board members."

67. The Plaintiff avers that these comments were made in an attempt to justify the Board's subsequent decision not to reappoint him as a police officer.

68. On June 28, 2017, the Select Board met again to discuss approval of reappointments in various capacities for town employees.

69. In total, forty-three individual employees for the Town of Monterey were recommended for reappointment and approved unanimously by the Select Board.

70. During the same Select Board meeting on June 28;

> "The Chief of Police recommended Joseph Delmolino, Matthew Bodnar and Shawn Courtney for 1 year as part time reserve intermittent officers. He also recommended Michael Johnson be reappointed as full time sergeant. A motion was made to reappoint Joseph Delmolino, Matthew Bodnar and Shawn Courtney for 1 year as part time reserve intermittent officers. The motion was seconded and approved unanimously. A motion was made not to reappoint Michael Johnson as the full time sergeant. The motion was seconded and approved unanimously." (Attached hereto as Exhibit 7, 6/28/17 Meeting Minutes)

71. On June 28, 2017, Plaintiff received a letter signed by the three members of the Select Board.

72. Without reason or justification, the letter stated, "This letter is to inform you that you were not reappointed and your employment with the Town of Monterey ends effective midnight on June 30, 2017." (Attached hereto as Exhibit 8)

73. The Board's overt retaliatory animus is demonstrated by the temporal proximity of their actions and further by their statement that they would agree to reappoint

Officer Fredsall if Chief Backhaus recommended it, but refused to do so despite the Chief's strong recommendation to reappoint Plaintiff.

74. On July 19, 2017, the Chief stated, "My recommendations for all reappointments were based on those officers that met the expectations of the Monterey Police Department, and these decisions are based on the safety of the community and the continuity of the police department."

75. The Board subsequently denied Plaintiff medical insurance that he was entitled to based upon his service with the Town. The Town also attempted to prevent the Plaintiff from receiving unemployment benefits.

76. On August 3, 2017, Plaintiff was approved for unemployment based upon the Massachusetts Executive Offices of Labor and Workforce Development's determination that the Town "failed to provide sufficient separation information, it cannot be determined that the claimant's discharge was for deliberate misconduct in willful disregard of the employing unit's interest or for a knowing violation of a reasonable and uniformly enforced company rule or policy." (Attached hereto as Exhibit 9)

77. On or about October of 2017, the Select Board hired a police Sergeant to the Monterey Police Department to fill the void left by Plaintiff's departure.

COUNT ONE- FIRST AMENDMENT VIOLATIONS (POLITICAL
DISCRIMINATION AND RETALIATION)
v. Defendants Town of Monterey, Monterey Select Board and Kenneth Basler in his
official and individual capacities

78. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

79. It is clearly established that the First Amendment of the United States Constitution guarantees the right to freedom of speech, the right to freedom of expression, the right to freedom of association, the right to assemble and to petition the Government for redress, the right to vote and the right to affiliate with a political party of one's choosing.

80. It is also well established that government bodies or officials, or individuals acting under color of state law and/or whose acts constitute state action, are forbidden by the First Amendment from discriminating, retaliating, abusing their authority, or taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment.

81. Similarly, the First Amendment protects public employees from discrimination, retaliation, being subjected to abuses of authority, or suffering adverse

employment actions in response for engaging in political activity unless political loyalty is an appropriate requirement of the employment.

82. The Defendants, named here, have subjected the Plaintiff to termination of his employment, denial of benefits, refusals to hire, rehire or recall, and/or to acts of harassment, deprivation of duties and work conditions inferior to the norm, all of which constitute actionable adverse employment actions protected by the First Amendment.

83. Political activity, affiliation, beliefs and the right to vote are also matters of public concern.

84. The First Amendment prohibits government officials from taking adverse employment action against a non-policymaking government employee based on the employee's political affiliation.

85. It is clear that the Plaintiff's First Amendment speech and activities were a substantial or motivating factor in the adverse employment actions complained of herein. By subjecting Plaintiff to adverse employment actions and/or retaliating against him on the basis of political affiliation, and/or for engaging in political activity, the Defendants have deprived Plaintiff of his First Amendment Rights.

86. Defendants' actions have caused a chilling effect on Plaintiff's First Amendment rights and his exercise of First Amendment protected activity.

87. As a consequence of the Defendants' actions, the Plaintiff suffered and continues to suffer damages, including, but not limited to: loss of income, loss of employment benefits, other financial losses, loss of professional opportunities, loss of personal and professional reputation, loss of community standing, and emotional and mental distress.

### COUNT TWO - WHISTLEBLOWER (M.G.L. ch. 149, § 185) v. TOWN OF MONTEREY

88. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

89. The Plaintiff, through various means and measures, has reported, objected to, filed written complaints and oral reports about ongoing violations of law in the Town of Monterey and by the Select Board including, but not limited to, violations by Defendants of Town bylaws.

90. The Defendants retaliated against Plaintiff for disclosing, objecting to and/or refusing to participate in an activity, policy or practice which the Plaintiff reasonably believed was in violation of a law and/or a rule or regulation

promulgated by law, in violation of the Massachusetts Whistleblower statute, G.L.c.149 §185.

91. Plaintiff has been retaliated against for reporting and objecting to such actions and as a result of raising these issues was subsequently subjected to disparate treatment, a hostile work environment, retaliatory acts, and termination from his employment.

92. As a consequence of the Defendants' actions, Plaintiff suffered and continues to suffer damages, including, but not limited to: loss of income, loss of employment benefits, other financial losses, loss of professional opportunities, loss of personal and professional reputation, loss of community standing, and emotional and mental distress.

WHEREFORE, Plaintiff demands judgment against the Defendant on Count Two, plus interest and costs of this action, and reasonable attorneys' fees as provided under G.L.c.149, Section 185.

COUNT THREE – MASSACHUSETTS CIVIL RIGHTS (M.G.L. ch. 12, §§ 11H, I)
v. Defendants Town of Monterey, Monterey Select Board and Kenneth Basler in his official and individual capacities

93. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

94. Defendants, in their official and individual capacities have attempted to interfere with, and interfered with Plaintiff's exercise and enjoyment of rights secured by the constitution and laws of the United States, and the constitution and laws of the Commonwealth, by threats, intimidation and coercion, including his right to free speech and equal protection of the laws.

WHEREFORE, Plaintiff demands judgment against the Defendant on this Count plus interest and costs of this action, and reasonable attorneys' fees as provided under M.G.L. c. 12, Section 11I.

COUNT FOUR – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
v. Defendants Town of Monterey, Monterey Select Board and Kenneth Basler in his official and individual capacities

95. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

96. The conduct of the defendants towards the plaintiff was extreme in degree and outrageous in character, resulting in the intentional and reckless infliction of emotional distress upon plaintiff.

97. Defendants intended to inflict emotional distress on plaintiff or knew or should have known that emotional distress was a likely result of defendant's conduct.

98. Defendants conduct as alleged above was extreme and outrageous, beyond all possible bounds of decency and was utterly intolerable.

99. The outrageous actions of the Defendants were the cause of plaintiff's distress and the emotional distress sustained by the Plaintiff is of a nature that no reasonable person could be expected to endure.

100.      As a result of the outrageous actions of the Defendants, Plaintiff was caused to suffer emotional injuries and damages.

   THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL COUNTS.

                                        Respectfully submitted,
                                        For Plaintiff,
                                        By his attorney,


                                        _____
                                        Timothy M. Burke, BBO #065720
                                        160 Gould Street, Suite 100
                                        Needham, MA 02494-2300
Dated: October 31, 2017                 (781) 455-0707

<u>Certificate of Service</u>

I hereby certify that these documents were filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be mailed via first class mail to those registered as non-participants.


Dated:          10/31/2017                    /s/ Timothy M. Burke